UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

DANA G. SMITH,

       Petitioner,

v.                                                                  Case No.  3:12cv326/LC/CJK

MICHAEL D. CREWS,

       Respondent.

_____/

## REPORT AND RECOMMENDATION

      Before the court is a petition for writ of habeas corpus filed under 28 U.S.C. § 2254 (doc. 1) and supporting memorandum (doc. 2).  Respondent filed an answer, submitting relevant portions of the state court record.  (Doc. 20).  Petitioner replied. (Doc. 24).  The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B).  After careful consideration of all issues raised by petitioner, the undersigned concludes that no evidentiary hearing is required for the disposition of this matter.  Rule 8(a) of the Rules Governing Section 2254 Cases in the United States District Courts.  The undersigned further concludes that the pleadings and attachments before the court show that petitioner is not entitled to federal habeas relief, and that the petition should be denied.

## BACKGROUND AND PROCEDURAL HISTORY

On August 10, 2007, a Florida grand jury indicted petitioner in Escambia County Circuit Court Case No. 07-CF-4037, with the First Degree Premeditated Murder with a Weapon of Daryl Dulaney.  (Doc. 20, Ex. A, pp. 1-2).[1]  Petitioner went to trial and, on March 11, 2009, was found guilty as charged by jury verdict.  (Ex. A, p. 43).  Petitioner was adjudicated guilty and sentenced to life in prison without parole.  (Ex. A, pp. 45-51).  Petitioner's judgment of conviction was affirmed on direct appeal on March 19, 2010.  *Smith v. State*, 30 So. 3d 497 (Fla. 1st DCA 2010) (Table) (copy at Ex. E).

On July 27, 2010, petitioner filed a motion for postconviction relief under Florida Rule of Criminal Procedure 3.850.  (Ex. G, pp. 1-38).  The state circuit court denied relief.  (*Id*., pp. 42-122).  The Florida First District Court of Appeal ("First DCA") per curiam affirmed on December 7, 2011, without a written opinion.  *Smith v. State*, 78 So. 3d 540 (Fla. 1st DCA 2011) (Table) (copy at Ex. J).  The mandate issued February 16, 2012.  (Ex. L).

Petitioner filed his federal habeas petition on July 27, 2012.  (Doc. 1, p. 1).  The petition raises five grounds for relief – four claims of ineffective assistance of trial counsel and one claim of newly discovered evidence.  (Doc. 1).  Respondent asserts that each of petitioner's claims fails for one or more of the following reasons: (1) the claim is insufficiently pled; (2) the claim does not present an issue cognizable on federal habeas review; (3) the claim is procedurally defaulted; (4) the claim is without merit.  (Doc. 20).

---

[1]All references to exhibits are to those provided at Doc. 20, unless otherwise noted.

## SECTION 2254 STANDARD OF REVIEW

Federal courts may issue habeas corpus relief for persons in state custody pursuant to 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA).  Pub. L. 104-132, § 104, 110 Stat. 1214, 1218-19. Section 2254(d) provides, in relevant part:

> (d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (2011).

The United States Supreme Court explained the framework for § 2254 review in *Williams v. Taylor*, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[2]  The appropriate test was described by Justice O'Connor as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently

---

[2]Unless otherwise noted, references to *Williams* are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367-75, 390-99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and – except as to the footnote – Scalia) in part II (529 U.S. at 403-13).  The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

> than this Court has on a set of materially indistinguishable facts.  Under
> the "unreasonable application" clause, a federal habeas court may grant
> the writ if the state court identifies the correct governing legal principle
> from this Court's decisions but unreasonably applies that principle to the
> facts of the prisoner's case.

*Id.*, 529 U.S. at 412-13 (O'Connor, J., concurring).

Employing the *Williams* framework, on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a state court proceeding, the federal court must first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003).  The law is "clearly established" only when a Supreme Court holding at the time of the state court decision embodies the legal principle at issue.  *Thaler v. Haynes*, 559 U.S. 43, 130 S. Ct. 1171, 1173, 175 L. Ed. 2d 1003 (2010); *Bowles v. Sec'y for Dep't of Corr.*, 608 F.3d 1313, 1315 (11th Cir. 2010).

After identifying the governing legal principle(s), the federal court determines whether the state court adjudication is contrary to the clearly established Supreme Court case law.  The adjudication is not contrary to Supreme Court precedent merely because it fails to cite to that precedent.  Rather, the adjudication is "contrary" only if either the reasoning or the result contradicts the relevant Supreme Court cases. *Early v. Packer*, 537 U.S. 3, 8, 123 S. Ct. 362, 154 L. Ed. 2d 263 (2002) ("Avoiding th[e] pitfalls [of § 2254(d)(1)] does not require citation to our cases – indeed, it does not even require *awareness* of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them.").  If the state court decision <u>is</u> contrary to clearly established federal law, the federal habeas court must

independently consider the merits of the petitioner's claim.   *See Panetti v. Quarterman*, 551 U.S. 930, 954, 127 S. Ct. 2842, 168 L. Ed. 2d 662 (2007).

If the state court decision is not contrary to clearly established federal law, the federal habeas court next determines whether the state court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases.  The federal court defers to the state court's reasoning unless the state court's application of the legal principle(s) was "objectively unreasonable" in light of the record before the state court. *Williams*, 529 U.S. at 409; *see Holland v. Jackson*, 542 U.S. 649, 652, 124 S. Ct. 2736, 159 L. Ed. 2d 683 (2004) (per curiam); *cf. Bell v. Cone*, 535 U.S. 685, 697 n. 4, 122 S. Ct. 1843, 152 L. Ed. 2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law).  An objectively unreasonable application of federal law occurs when the state court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case" or "unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context." *Putman v. Head*, 268 F.3d 1223, 1241 (11th Cir. 2001).  A state court, however, may "decline to apply a specific legal rule that has not been squarely established by [the Supreme Court]" without running afoul of the "unreasonable application" clause. *Knowles v. Mirzayance*, 556 U.S. 111, 122, 129 S. Ct. 1411, 173 L. Ed. 2d 251 (2009).

When faced with a state appellate court's summary affirmance of a trial court's decision, the "unreasonable application" standard focuses on the state court's ultimate conclusion, not the reasoning that led to it.  *See Gill v. Mecusker*, 633 F.3d 1272, 1287 (11th Cir. 2011) (*citing Harrington v. Richter*, — U.S. —, 131 S. Ct. 770, 786,

178 L. Ed. 2d 624 (2011)).  The federal court  must determine what arguments or theories supported or could have supported the state court's decision, and then ask whether it is possible that fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior Supreme Court decision.  *See Richter*, 131 S. Ct. at 786; *see also Gill*, 633 F.3d at 1292 (holding that the federal district court may rely on grounds other than those articulated by the state court in determining that habeas relief was not warranted, so long as the district court did not err in concluding that the state court's rejection of the petitioner's claims was neither an unreasonable application of a Supreme Court holding nor an unreasonable determination of the facts).  In sum, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 131 S. Ct. at 786-87.

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in state court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).  As with the "unreasonable application" clause, the federal court applies an objective test.  *Miller-El v. Cockrell*, 537 U.S. 322, 340, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003) (holding that a state court decision based on a factual determination "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceeding.").  The "unreasonable determination of the facts" standard is implicated only to the extent the validity of the state court's ultimate conclusion is

premised on unreasonable fact finding. *See Gill*, 633 F.3d at 1292.

When performing review under § 2254(d), the federal court presumes that all factual determinations made by the state court are correct. 28 U.S.C. § 2254(e)(1). The petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." *Id.*; *see, e.g., Miller-El*, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence"). Neither the Supreme Court nor the Eleventh Circuit has interpreted how § 2254(d)(2) and §2254(e)(1) interact in the context of fact-based challenges to state court adjudications. *Cave v. Sec'y for Dep't of Corr.*, 638 F.3d. 739 (11th Cir. 2011). However, the Eleventh Circuit recently declined to grant habeas relief under § 2254(d)(2) in the context of a state appellate court's summary affirmance, where it found that the validity of the state court decision was not premised on the trial court's unreasonable fact finding, and that the petitioner failed to demonstrate "by clear and convincing evidence that the record reflect[ed] an insufficient factual basis for affirming the state court's decision." *Gill*, 633 F.3d at 1292.

Only if the federal habeas court finds that the petitioner satisfied AEDPA and § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's claims. *See Panetti*, 551 U.S. 930, 954, 127 S. Ct. 2842. Even then, the writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States." 28 U.S.C. § 2254(a). "If this standard is difficult to meet, that is because it was meant to be." *Richter*, 131 S. Ct. at 786.

DISCUSSION

<u>Ground One</u>      <u>"Counsel Failed to Present Available Exculpatory Evidence That Proved Petitioner Was Innocent Of Charged Crime."</u> (Doc. 1, p. 5).

Ground One of the petition asserts that trial counsel was ineffective for failing to present the following evidence:  (1) the result of a tire track comparison showing that tracks found in front of the carport (where the victim was shot) did not match the tire tracks of the vehicle petitioner drove that evening/morning, and (2) the result of a gunshot residue test showing that no residue was found on petitioner.  (Doc. 1, pp. 5-8).  Petitioner asserts that trial counsel was aware of both test results, but did not present them at trial.  (Doc. 1, p. 6).  The parties agree that this claim was adjudicated on the merits in petitioner's Rule 3.850 proceeding.  (Doc. 1, pp. 5-8; Doc. 20, p. 12).  Respondent asserts that petitioner is not entitled to federal habeas relief, because the state court's rejection of his claim was consistent with *Strickland*.  (Doc. 20, pp. 12-14).  Petitioner concedes in his reply that he "is unable to meet the requirements of section 2254(d)(1)" as to counsel's failure to present the tire track comparison evidence, and by this concession abandons that aspect of his ineffective assistance claim.  (Doc. 24, p. 3).  Given petitioner's concession, the court will address only that aspect of petitioner's ineffective assistance claim relating to counsel's alleged failure to present evidence that petitioner tested negative for gunshot residue.

   A.      Clearly Established Federal Law

   In *Strickland v. Washington*, 466 U.S. 688, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the Supreme Court set out a two-part inquiry for ineffective assistance claims.  A petitioner must show that (1) his counsel's performance was constitutionally deficient, and (2) the deficient performance prejudiced the petitioner.  *Id.*, 466 U.S.

at 687.  "First, petitioner must show that 'counsel's representation fell below an objective standard of reasonableness. Second, petitioner must show that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'"  *Darden v. Wainwright*, 477 U.S. 168, 184, 106 S. Ct. 2464, 91 L. Ed. 2d 144 (1986) (quoting *Strickland*, 466 U.S. at 668, 694).

When a district court considers a habeas petition, the state court's findings of historical facts in the course of evaluating an ineffectiveness claim are subject to the presumption of correctness, while the performance and prejudice components are mixed questions of law and fact.  *Strickland*, 466 U.S. at 698; *Collier v. Turpin*, 177 F.3d 1184, 1197 (11th Cir. 1999).  "Surmounting *Strickland*'s high bar is never an easy task."  *Padilla v. Kentucky*, 559 U.S. 356, 371, 130 S. Ct. 1473, 176 L. Ed. 2d 284 (2010).  "Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult."  *Richter*, 131 S. Ct. at 788.  As the *Richter* Court explained:

> The standards created by *Strickland* and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d).  When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Id.* (citations omitted).

B.     Federal Review of State Court Decision

Petitioner raised this claim as Issue One of his Rule 3.850 motion.  (Ex. G, pp. 4-6).  The state court denied relief without an evidentiary hearing.  The court's

written order discussed the two-pronged test for ineffective assistance claims articulated in *Strickland v. Washington*, (Ex. G, pp. 42-43), and explained why petitioner's allegations failed to meet that standard, as follows:

### "Issue One"
Counsel failed to present exculpatory evidence at trial.

Specifically, Defendant claims that counsel should have presented evidence of a tire track comparison and a gunshot residue test "that proved movant was innocent of the charged crime." Defendant claims that the gunshot residue test would have been especially important, because the jury asked during deliberations if such a test had been performed on Defendant.

In order to determine if counsel was deficient for failing to present the above-referenced evidence, the Court must consider if the evidence would have made a difference in the outcome of the proceedings.

### Tire track comparison results

First, the testimony at trial reflected that Defendant parked approximately "two houses down" on the night in question. However, the defense called Deputy Mark Smeester to testify, who was the "case officer," or one of the lead investigators in the case. Deputy Smeester testified that he was "informed about the tire tracks at the beginning of the carport," and he requested that analysis be done on the tracks. He further testified that he didn't think any match was made. Counsel reminded the jury in his closing argument: "Tire tracks. Tire tracks. Nothing came back to this silver car that Dana Smith was driving, but there were fresh tire tracks." Therefore, the record reflects that counsel presented evidence of the tire track comparison results, and accordingly he was not deficient for failing to do so as Defendant alleges.

## Gunshot residue test results

Defendant claims that he was tested by investigators for gunshot residue with negative results, and that counsel was deficient for failing to present this evidence to the jury.

Defense counsel questioned Deputy Smeester on direct examination about gunshot residue tests that were performed. Immediately after the shooting, Deputy Smeester interviewed Savory McCuff and Timothy Rease, but only Mr. McCuff was tested for gunshot residue. Deputy Smeester further testified that a lieutenant interviewed Curtis Sheffield, but no gunshot residue test was performed, possibly because the interview did not take place until the following day. Similarly, Defendant did not come into contact with police until some time after the shooting.

Moreover, Defendant's trial testimony was that when he arrived home on the evening of the shooting, he did various things around the house including taking a bath. Therefore, even if a gunshot residue test had been performed on Defendant after he was apprehended by police, it would not have proven his innocence as defendant alleges, because any residue would have been washed away in the bath.

Furthermore, defense counsel argued in closing arguments that the police investigation in this case was shoddy, because for example, the police "took gunshot residue tests on one individual. They didn't even bother with the other two [alleged eyewitnesses]. They should have but they didn't bother." Additionally, the State made a persuasive comment in its final remarks to the jury that the gunshot residue tests would not have been probative "because they were all standing right there when the gunshots started firing."

The Court finds that if counsel would have presented evidence that a gunshot residue test was performed on Defendant with negative results as he alleges, it would not have changed the outcome of the proceedings. The record reflects that defense counsel was aware of the

gunshot residue tests performed on the witnesses, and the court concludes that it is likely that counsel chose not to highlight the test allegedly performed on Defendant because it was not probative. This would have been a reasonable decision within counsel's professional judgment. As counsel was not deficient, and Defendant was not prejudiced by any inaction on counsel's part, Defendant is not entitled to relief.

(Ex. G, pp. 44-46) (footnotes omitted). The state appellate court summarily affirmed.

Petitioner argues that the state court's rejection of his claim is unreasonable because: (1) it is grounded in the court's improper speculation that counsel's failure to present the gunshot residue results was a tactical decision made after determining the evidence was not probative (doc. 1, pp. 6-7); and (2) it is grounded in the court's unreasonable determinations that counsel's decision not to present the evidence was reasonable and that petitioner was not prejudiced by counsel's inaction. With regard to the latter, petitioner emphasizes that during the jury's deliberation, the jury sent a note to the judge asking if petitioner had been tested for gunshot residue and, if so, the result of the test. (Doc. 1, pp. 6-7; *see also* Doc. 20, Ex. A, p. 31A (jury note asking: "Was Mr. Smith tested for gun residue? & the results if he was.")).

The state court took as true petitioner's allegations that a gunshot residue test was performed on petitioner, that the test was negative, and that counsel was aware of the negative result. Petitioner takes issue with the state court's factual finding that counsel's failure to present the gunshot residue evidence was likely the product of a strategic choice, and argues that this finding was speculation because "the trial court cited no record support for its determination that counsel's action was tactical and failed to attach portions of the record to support its findings." (Doc. 1, p. 7).

Petitioner has not put forth any evidence, much less clear and convincing evidence, to rebut the state court's factual finding that defense counsel likely made a strategic decision not to introduce the gunshot residue test result. *See* 28 U.S.C. § 2254(e)(1) ("[A] determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."); *Provenzano v. Singletary*, 148 F.3d 1327, 1330 (11th Cir. 1998) ("The question of whether an attorney's actions were actually the product of a tactical or strategic decision is an issue of fact, and a state court's decision concerning that issue is presumptively correct."). Petitioner cannot genuinely argue that the state court's reliance on some of petitioner's own factual allegations was unreasonable. As the state court's finding does not contradict the record evidence, this court will defer to its determination that counsel's inaction was the product of a tactical choice.

Similarly, the state court's conclusion – that petitioner failed to overcome the presumption that under the circumstances counsel's failure to introduce the gunshot residue test result might be considered sound trial strategy – is consistent with Supreme Court precedent and is entitled to deference under the AEDPA. 28 U.S.C. § 2254(d)(1). As the Supreme Court stated in *Richter*:

> Although courts may not indulge "post hoc rationalization" for counsel's decisionmaking that contradicts the available evidence of counsel's actions, *Wiggins*, 539 U.S., at 526-527, neither may they insist counsel confirm every aspect of the strategic basis for his or her actions. There is a "strong presumption" that counsel's attention to certain issues to the exclusion of others reflects trial tactics rather than "sheer neglect." *Yarborough v. Gentry*, 540 U.S. 1, 8, 124 S. Ct. 1, 157 L. Ed .2d 1 (2003) (per curiam). . . . *Strickland* . . . calls for an inquiry into the objective reasonableness of counsel's performance, not counsel's

subjective state of mind.  466 U.S., at 688.

*Richter*, 131 S. Ct. at 790 (*citing Wiggins v. Smith*, 539 U.S. 510, 525, 123 S. Ct. 2527, 156 L. Ed. 2d 471 (2003)). The Eleventh Circuit explained further:

> This presumption [that trial counsel's performance was constitutionally adequate] is an evidentiary presumption that carries through the trial. *Chandler v. United States*, 218 F.3d 1305, 1314 n. 15 (11th Cir. 2000) (en banc).  Thus, a petitioner must not present evidence merely to refute the presumption.  Rather, the petitioner must present evidence that outweighs the presumed evidence of competence. *Kimmelman v. Morrison*, 477 U.S. 365, 384 106 S. Ct. 2574, 2588, 91 L. Ed. 2d 305 (1986) ("[T]he defendant must rebut this presumption by proving that his attorney's representation was unreasonable under prevailing professional norms and that the challenged action was not sound strategy.").  Therefore, "'where the record is incomplete or unclear about [counsel]'s actions, we will presume that he did what he should have done, and that he exercised reasonable professional judgment.'"  *Chandler*, 218 F.3d at 1314 n.15 (*quoting Williams v. Head*, 185 F.3d 1223, 1228 (11th Cir.1999)).

*Harvey, v. Warden, Union Corr. Inst.*, 629 F.3d 1228, 1238-39 (11th Cir. 2011).

Contrary to petitioner's argument (doc. 1, pp. 6-7; doc. 24, p. 4), there was nothing improper or unreasonable about the state court's basing its decision that petitioner failed to meet *Strickland*'s performance prong on strategic considerations that could be gleaned from the record without hearing testimony from counsel as to his actual thinking. *See Richter*, 131 S. Ct. at 790 (holding that state court reasonably could conclude, from strategic considerations gleaned from the record, that counsel's action (or inaction) was reasonable without testimony from counsel as to his actual thinking).  In light of the record, including the length of time (over six hours) and circumstances intervening the shooting and petitioner's arrest, a court could reasonably conclude that counsel's decision not to use petitioner's gunshot residue

test as part of his alibi defense was reasonable.

Petitioner emphasizes the jury's "concern" during deliberations about the presence of gunshot residue on petitioner, and argues that it was unreasonable to conclude competent counsel could find the test result not probative. (Doc. 1, pp. 6-7). Petitioner's reliance on "the harsh light of hindsight" to cast doubt on counsel's perspective during the presentation of petitioner's alibi defense is precisely what *Strickland* and the AEDPA seek to prevent. *Richter*, 131 S. Ct. at 789 (citing cases); *Strickland*, 466 U.S. at 689 (counseling against judging trial counsel's performance with the benefit of hindsight); *Yarborough*, 540 U.S. at 8, 124 S. Ct. at 6 ("The Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight."); *Bell v. Cone*, 535 at 698, 122 S. Ct. at 1852 (same).  Further, "trial advocacy is not a science, but an art; there are few 'right' answers in the proper way to handle a trial."  *Harvey*, 629 F.3d at 1238 (*quoting Strickland*, 466 U.S. at 693, 104 S. Ct. at 2067 ("Representation is an art, and an act or omission that is unprofessional in one case may be sound or even brilliant in another.")).  There is a reasonable argument that petitioner's defense counsel satisfied *Strickland*'s deferential standard.

Petitioner has not shown "that the state court's ruling . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 131 S. Ct. at 787; *see also id.* at 786 ("A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." (*quoting Yarborough*, 541 U.S. at 664, 124 S. Ct. 2140)).  The state court's rejection of petitioner's ineffective assistance claim was not

contrary to *Strickland*, did not involve an unreasonable application of *Strickland*, and was not based on an unreasonable determination of the facts.  Petitioner is not entitled to federal habeas relief on Ground One.

Ground Two          "Counsel Failed To Utilize Available Conflicts In The Evidence That Was Critical To Credibility And Impeachment Of Witnesses Testimony."  (Doc. 1, p. 8).

Petitioner alleges that various aspects of the three eyewitnesses' trial testimony were inconsistent with their respective pretrial statements to police and with each other's trial testimony.  (Doc. 1, pp. 8-9).  Petitioner describes the inconsistencies as either the witnesses' including more "critical" details in their trial testimony than in their pretrial statements to police and depositions, or the witnesses' failing to recall "critical" details at trial that were included in their pretrial statements.  (*Id*., p. 9).  Petitioner faults trial counsel for failing to "collectively use[ ] the inconsistencies of their testimonies to illustrate the witnesses were being untruthful as to what transpired."  (*Id*., p. 8).  Petitioner asserts that the Rule 3.850 court misconstrued his claim as alleging that counsel failed to properly impeach witnesses, and "in doing so, has insufficiently addressed the allegations of Petitioner's claim."  (*Id*., p. 8).  Respondent asserts that federal habeas relief should be denied because this claim is insufficiently pled (doc. 20, pp. 14-16) and without merit (*id*., pp. 16-21).

A.       Sufficiency of Petitioner's Pleading

Respondent asserts that petitioner's claim is insufficiently pled because petitioner "failed to state which witnesses his counsel failed to cross-examine regarding inconsistencies between their statemetns to law enforcement and trial testimony."  (Doc. 20, p. 16).  Petitioner describes the witnesses that are the subject of his claim as "the three (3) witnesses" (doc. 1, p. 9) who were "in close proximity

to each other on the night of the homicide" (*id*., p. 8) and "only a few feet away" from the shooting (*id*., p. 9).  Other than petitioner and the victim Mr. Dulaney, the only individuals in Mr. Dulaney's carport at the time petitioner shot Mr. Dulaney were Savory McCuff, Timothy Rease and Curtis Sheffield.  Petitioner clarifies in his reply that his claim in state court and here involves counsel's failure to properly impeach McCuff, Rease and Sheffield.  (Doc. 24, p. 8).  In light of this record, the court finds that petitoiner's ineffective assistance claim is sufficiently pled and is the same claim petitioner presented to the state court in his Rule 3.850 motion.

B.      Clearly Established Federal Law

The clearly established Federal law governing ineffective assistance claims is the *Strickland* standard, outlined above.

C.      Federal Review of State Court Decision

Petitioner raised this claim as Issue Two of his Rule 3.850 motion.  (Ex. G, pp. 7-18).  Regarding witness Savory McCuff, petitioner alleged that McCuff added the additional fact in his deposition and trial testimony that petitioner, just prior to shooting the victim, made random remarks that confused McCuff, for example, "You know how the 'Gs' carry," and that McCuff figured petitioner was intoxicated.  (Doc. 20, Ex. G, pp. 9-10).[3]  Regarding witness Timothy Rease, petitioner alleged that

---

[3]Petitioner quoted this excerpt from McCuff's trial testimony:

Q. [Prosecutor].  Describe the shooting.  I mean, well did Dana Smith say anything that was unusual?

A. [Witness McCuff].  He kept — he had bent down to me, and he said, "you know how the 'Gs' carry.  We live by the 'G' code."  And I was — you know, I didn't really get it.  And he said, "Look at me when I'm saying this."  So he said it kind of serious.  That made me like, damn.  I'm thinking it's the alcohol talking, you know, talking, you know, "It's the 'G' code.   This how we carry," and all this here.  So he

Rease stated in police interviews that either he or all of the witnesses were walking away from the carport when the shooting began, but at trial testified they were all sitting around the table in the carport when the shooting began.  (*Id*., pp. 13-15). Petitioner also alleged Rease changed a crucial detail concerning whether petitioner was holding anything when he arrived at Dulaney's carport – Rease told police prior to trial that petitioner had nothing in his hand when he walked up to the carport, but at trial Rease testified he could not remember if petitioner had anything in his hand when he walked up to the carport.  (*Id*., pp. 14-15).  Regarding witness Sheffield, petitioner alleged that Sheffield's pretrial statements and trial testimony were the same, but that Sheffield's testimony differed from McCuff's and Rease's version of events in that Sheffield did not mention whether petitioner said anything to the victim or McCuff prior to shooting the victim, but McCuff and Rease did.  (*Id*., p. 17).

The state court denied relief without an evidentiary hearing.  The court's written order discussed the two-pronged test for ineffective assistance claims articulated in *Strickland v. Washington*, (Ex. G, pp. 42-43), and explained why petitioner's allegations failed to meet that standard, as follows:

leaned down and he said, "Look at me."  He said, "You not hearing me."  So I – because he on my shoulder.  So I said – I looked at him like, what's wrong with this dude?  Alcohol going a little bit too far.  That's when he said, "You know how the 'Gs' carry.  We fixing to carry it back how the 'Gs' carry."  That's when he leaned up and that's when the shooting happened, just like that, pow, pow."

(Ex. G, pp. 9-10 (quoting trial transcript at Ex. B, p. 31)).

**"Issue Two"**

Counsel failed to properly impeach witnesses.

A) Savory McCuff

Mr. McCuff was an eyewitness to the shooting who testified for the State. Defendant claims that Mr. McCuff's "initial statement to police" was inconsistent with his deposition and trial testimony. Specifically, Defendant claims that at his deposition and at trial, Mr. McCuff related some comments allegedly made by Defendant immediately before the shooting that Mr. McCuff did not initially report to police. Because this initial statement is not included in the record before the Court, the Court must rely on the facts in Defendant's motion.

A prior statement of a witness is admissible to impeach credibility only if it is truly inconsistent with the trial testimony or a material variance between the two statements exists. See Doty v. State, 884 So. 2d 547 (Fla. 4th DCA 2004). Moreover, "nit-picking" of allegedly inconsistent statements is not allowed. See Pearce v. State, 880 So. 2d 561, 569 (Fla. 2004) (citing Moton v. State, 689 So. 2d 259, 264 (Fla. 1997)).

Simply because Mr. McCuff included more detail in his deposition and trial testimony does not mean that those statements were inconsistent with a prior statement made to police that was less detailed. Therefore, impeachment would not have been appropriate because the statements were not truly inconsistent.

Furthermore, as mentioned *supra*, Mr. McCuff was interviewed by police immediately after the shooting, in which a friend of his had been killed only a few feet away from him. It would not be unusual for an individual to be unable to make a completely thorough statement directly after experiencing such a traumatic event. Therefore, it would not have been highly damaging to Mr. McCuff's credibility if the jury was presented with evidence that his initial statement lacked some detail that he was able to recall in his deposition and trial testimony.

Additionally, defense counsel impeached Mr. McCuff at trial with his previous felony convictions, and attacked the credibility of the State's witnesses in closing argument:

> That's what the State's case is based upon, three eyewitnesses. You can weigh their credibility, too: conviction of crimes, the way they testified, inconsistent statements, gold car. Now it's silver, oh now it was dark.

As the alleged prior statement of Mr. McCuff was not truly inconsistent, nor highly prejudicial to defendant or damaging to Mr. McCuff's credibility, defense counsel was not deficient for failing to impeach him at trial with the prior statement, and defendant is not entitled to relief on this claim.

B) Timothy Rease

In this claim, Defendant relates the contents of three alleged statements made by Mr. Rease to police that are not included in the record before the Court. The statements are each different as to the exact sequence of events that occurred immediately before the shooting. In the instant motion, Defendant points to one "crucial and exculpatory fact in Rease's deposition that could have been used to challenge the credibility of both McCuff and Sheffield's trial testimony. The fact concerned the statement made by Rease that Movant did not have anything in his hands when he came to the carport. The record reflects that Rease made the following statement in his deposition:

> Q [COUNSEL]: Okay, and when you all were in the carport and he got out of his car and came up there, did he have anything in his hands?
> A [REASE]: No, because he shook our hands . . .
> Q: I mean, was he drinking anything?
> A: No, I didn't see him drink nothing.

At trial, Mr. Rease testified that he could not recall if Defendant had anything in his hands, or if he was drinking anything, because it was

dark. This testimony is not truly inconsistent with his deposition, and accordingly, impeachment would not have been appropriate. See Brooks v. State, 918 So. 2d 181 (Fla. 2005); see also James v. State, 765 So. 2d 763 (Fla. 1st DCA 2000) (If a witness cannot recall a fact at trial, that testimony is not considered inconsistent with a different prior statement).

Furthermore, "impeaching" Mr. Rease with the testimony of other witnesses would not have been proper. The contradicting statements were presented at trial by the witnesses' own testimony. Consequently, counsel was not deficient for failing to further impeach Timothy Rease.

C) Curtis Sheffield

Defendant admits that "Sheffield's trial testimony mirrored his initial statement and the statements made during his deposition," but claims that counsel was deficient for failing to impeach Mr. Sheffield with the conflicting testimony of Mr. McCuff and Mr. Rease. Again, this would not have been an appropriate technique to "impeach" Mr. Sheffield, as it is not proper for a witness to comment on the veracity of another witness's testimony. The inconsistencies in the statements of the three eyewitnesses were brought out by the testimony of each witness at trial, and highlighted by defense counsel in his closing argument. Defendant is not entitled to relief on this claim.

(Ex. G, pp. 46-50) (footnotes omitted). The state appellate court summarily affirmed.

Petitioner asserts that the state court misinterpreted his claim when it characterized him as faulting counsel for "fail[ing] to properly impeach witnesses." (Doc. 1, p. 8). Petitioner states that his claim is, instead, that "[c]ounsel could have collectively used the inconsistencies of their testimonies to illustrate the witnesses were being untruthful as to what transpired," (id.), and that "counsel was deficient for failing to impeach them at trial with their prior statements." (Id., p. 10). Petitioner did not specify in his Rule 3.850 motion, or here, exactly how counsel should have

"used" the witnesses' prior statements (whether through interrogation on cross-examination, introduction of the prior statements into evidence, or argument to the jury).  Regardless, the state court properly construed and adjudicated on the merits all aspects of petitioner's claim.  The state court's decision is entitled to deference under the AEDPA's standard of review.

The state court's findings of fact are amply supported by the record and are presumed correct.  Petitioner has not rebutted the presumption of correctness with clear and convincing evidence to the contrary.  As to petitioner's claim concerning impeachment of McCuff with his prior statement to police, the court concluded, reasonably, that petitioner failed to establish deficient performance because his allegations did not demonstrate McCuff's prior statement was inconsistent with his trial testimony.  McCuff's alleged pretrial statement to police (as related by petitioner in his Rule 3.850 motion at Ex. G, pp. 7-9), did not say petitioner was silent and, more significantly, does not show McCuff was asked by police, as he was asked at trial by the prosecutor, whether petitioner "sa[id] anything that was unusual." (*Compare* Ex. G, pp. 7-9, *with* Trial Tr., Ex. B, p. 31).  "'To testify later in greater detail in response to detailed questions is not inconsistent.'"  *United States v. Jacoby*, 955 F.2d 1527, 1539 (11th Cir. 1992) (holding that witness' grand jury testimony was not admissible under Federal Rules of Evidence as a prior inconsistent statement, where trial testimony was not inconsistent with, but merely provided greater detail than, grand jury testimony) (*quoting United States v. Leach*, 613 F.2d 1295, 1305 (5th Cir. 1980)).  This principle is consistent with Florida law, as noted in the state court's decision.

The state court also determined, reasonably, that counsel's failure to impeach Rease with Rease's prior statements to police was not deficient, because petitioner

failed to establish that the proffered "impeachment" would have been allowed.  First, to the extent petitioner faults trial counsel for failing to question  Rease at trial about inconsistencies among Rease's various pretrial statements, petitioner fails to establish deficient performance, because counsel could impeach Rease only with prior statements that were inconsistent with Rease's statements <u>at trial</u>.  Even then, absent a showing of where counsel's alleged deficiency in failing to impeach Rease with his prior statement arguably could have affected the outcome of petitioner's trial, petitioner has not shown prejudice necessary to satisfy the second prong of *Strickland*.[4]  Petitioner identified for the state court one inconsistent statement that he belived to be "a very crucial and exculpatory fact in Rease's deposition that could have been used to challenge the credibility of both McCuff and Sheffield's trial testimony."  (Ex. G, p. 13).  That "fact" was Rease's deposition testimony that petitioner did not have anything in his hands when he approached Mr. Dulaney's carport.  Petitioner argued that Rease's deposition testimony contradicted McCuff's and Sheffield's testimony that petitioner was holding a plastic drinking cup when he approached the carport.[5]  As the state court reasonably concluded, counsel cannot be deficient for failing to impeach McCuff and Sheffield with Rease's prior deposition testimony, because it was Rease's prior statement, not McCuff's or Sheffield's.  *Brockington v. State*, 600 So. 2d 29, 30 (Fla. 2d DCA 1992) (holding that it is error

---

[4]For example, petitioner alleges Rease stated in pretrial police interviews that either he or all of the witnesses were walking away from the carport when the shooting started, but at trial stated they were all sitting around the table in the carport when the shooting started.  (Ex. G, pp. 13-15).

[5]McCuff testified at trial that petitioner was holding a plastic drinking cup as he approached Mr. Dulaney's carport.  A plastic drinking cup retrieved from the crime scene was admitted into evidence at trial.  McCuff identified the cup as the one petitioner was holding.  DNA developed from the cup matched petitioner's DNA.

to permit impeachment of a witness with statements of third parties not attributable to the witness).  Further, any inconsistencies between Rease's, McCuff's and Sheffield's trial testimony were apparent from the testimony itself and highlighted by defense counsel in closing argument.  Further, counsel was not deficient for failing to impeach Rease with his prior deposition statement, because Rease's trial testimony – that he did not recall whether petitioner had anything in his hand when he approached the carport and did not recall whether he saw petitioner drinking anything – was not inconsistent with his prior statement.  *See James v. State*, 765 So. 2d 763, 766 (Fla. 1st DCA 2000) (holding that it was improper to impeach a witness' asserted lack of memory by showing substantive statements he made when his memory was fresh; "'As a matter of logic, that is not appropriate impeachment by inconsistent statement.  The fact that a witness once stated something was true is not logically inconsistent with a subsequent loss of memory.  The only thing that is inconsistent with a claimed loss of memory is evidence that suggests that the witness in fact remembers.'" (*quoting State v. Staley*, 995 P. 2d 1217, 1220, 165 Or. App. 395 (2000)); *Calhoun v. state*, 502 So. 2d 1364, 1365 (Fla. 2d DCA 1987).

Finally with regard to Curtis Sheffield, the state court reasonably concluded that counsel was not deficient for failing to impeach Sheffield with the conflicting testimony of McCuff and Rease, because "impeaching" a witness with the testimony of another witness is not proper, nor is asking a witness to comment on the veracity of another witness' testimony.  *See Brockington, supra*; *Boatwright v. State*, 452 So. 2d 666, 668 (Fla. 4th DCA 1984) (holding that it is clearly error for one witness to testify as to the credibility of another witness).

The state court's rejection of petitioner's claim was not contrary to *Strickland*, did not involve an unreasonable application of *Strickland*, and was not based on an

unreasonable determination of the facts.  Petitioner is not entitled to federal habeas relief on Ground Two.

Ground Three         "Counsel Failed To Call Witness Who Would Have Provided Corroborating And Exculpatory Testimony That Could Have Been Used To Impeach Credibility Of Key State Witnesses." (Doc. 1, p. 10).

Petitioner claims counsel was ineffective for failing to call Crystal Young (who was lying down in the victim's home at the time of the shooting) to testify that she ran to the door upon hearing the shots and found Mr. Dulaney lying on the ground but did not see petitioner.  The parties agree that this claim was adjudicated on the merits in petitioner's Rule 3.850 proceeding. (Doc. 1, pp. 10-12; Doc. 20, p. 21).  Respondent asserts that petitioner is not entitled to federal habeas relief, because the state court's rejection of his claim was consistent with *Strickland*.  (*Id.*, pp. 21-23).  Petitioner concedes in his reply that he "is unable to meet the requirements of section 2254(d)(1)" as to Ground Three (doc. 24, p. 20), and by this concession abandons this claim.  In light of petitioner's abandonment, federal habeas relief should be denied as to Ground Three.

Ground Four         "Counsel Failed To Ask Witness During Cross-Examination Whether Complaints Made By Petitioner Concerning Victim Were Out Of Concern Or Ill Will In Nature Towards Victim." (Doc. 1, p. 12).

Petitioner claims counsel was ineffective for failing to ask State witness Joanna Shoemo whether complaints petitioner made to her concerning Mr. Dulaney were out of concern or ill will.  (Doc. 1, p. 12).  Petitioner is referring to the following exchange during trial:

Q. [Prosecutor]: Now, were you good friends with both Dana Smith and Daryl Dulaney at that time?

A. [Ms. Shoemo].  Yes.

Q.  Now, during this time period, did you ever hear Dana Smith make any complaints about Daryl Dulaney?

A. Yes.

(Ex. B, pp. 19-20).  Petitioner alleged in state court, as he does here, that "immediately" upon hearing this, he:

> requested counsel to ask Ms. Shoemo about the nature of the complaints. Petitioner informed counsel that if asked Ms. Shoemo would testify that Petitioner's complaints were about the company the victim kept and how he felt they were using the victim.  That company being specifically, the state's witnesses, Savory McCuff, Timothy Rease and Curtis Sheffield. Her response Petitioner contended would clear up any misconception the jury may have developed about the complaints he made.  Counsel, in response, advised Petitioner because the State had not demonstrated that the complaints were ill, it would be a waste of time to bring the matter to the jury's attention.

(Ex. G, pp. 21-22).  Petitioner asserts that the State referred to Ms. Shoemo's testimony in closing argument in arguing that petitioner's shooting of Mr. Dulaney was premeditated.

The parties agree that this claim was adjudicated on the merits in petitioner's Rule 3.850 proceeding.  (Doc. 1, pp. 12-14; Doc. 20, pp. 23-24).  Respondent asserts that petitioner is not entitled to federal habeas relief, because the state court's rejection of the claim was consistent with *Strickland*.  (*Id.*).

A.    Clearly Established Federal Law

The clearly established Federal law governing ineffective assistance claims is the *Strickland* standard, outlined above.

B.      Federal Review of State Court Decision

Petitioner raised this claim as Issue Four of his Rule 3.850 motion.  (Ex. G, pp. 21-24).  The state court denied relief without an evidentiary hearing.  (Ex. G, pp. 51-52).  The court's written order discussed the two-pronged test for ineffective assistance of counsel claims articulated in *Strickland v. Washington*, (Ex. G, pp. 42-43), and explained why petitioner's allegations failed to meet that standard, as follows:

<u>**"Issue Four"**</u>
Counsel was deficient for failing to properly cross-examine
Joanna Shoemo.

In this claim, Defendant has included several excerpts from the trial where the State presented evidence that Defendant had some kind of conflict with the victim, although it was not known what the conflict was about.  Ms. Shoemo testified at trial that she had heard Defendant complain about the victim.  Defendant alleges that counsel was deficient for failing to question Ms. Shoemo about the exact nature of these complaints, because she would have testified that Defendant was merely complaining that he was unhappy with the victim's choice of friends because they were "using" the victim; and that the complaints were not about a conflict that would have been a motive for murder, or would have demonstrated premeditation.

First, because Ms. Shoemo's testimony was vague, it was not highly prejudicial to Defendant.  Her testimony that defendant had complained about the victim in the past did not establish a motive for murder or prove premeditation.  Additionally, Defendant states in his motion that he told defense counsel at trial to question Ms. Shoemo as to the exact nature of the complaints, and counsel responded that "it would be a waste of time to bring the matter to the jury's attention."  This comment demonstrates that counsel considered questioning the witness as such, and decided against it.  Accordingly, the record reflects that counsel made a strategic decision, and Defendant has failed to prove that the decision was

unreasonable or that Defendant was prejudiced by any inaction on the part of counsel.  Defendant is not entitled to relief on this claim.

(Ex. G, pp. 51-52) (footnotes omitted).  The state appellate court summarily affirmed.

Again, the state court's findings of fact are amply supported by the record and are presumed correct.  Petitioner has not presented clear and convincing evidence to rebut the presumption of correctness.  Although petitioner challenges the state court's finding that counsel made a strategic decision not to question Shoemo about the nature of petitioner's complaints, petitioner's own allegations demonstrate that counsel was aware (by petitioner telling him at trial) what petitioner believed Shoemo would say, and that counsel chose as a matter of trial strategy not to press Shoemo for details.

The state court also reasonably determined that counsel's decision not to question Shoemo about the nature of petitioner's complaints was reasonable.  From the perspective of defense counsel, acting on petitioner's request was highly risky. Petitioner expected counsel to make a spur-of-the-moment decision to ask Shoemo a question in front of the jury that counsel had not asked her before, and to take petitioner's word for it that the answer would be as petitioner expected.  Counsel's conduct was in keeping with one of the most basic and well-known rules of trial advocacy:  "Never ask a question for which you do not know the answer." *Ward v. Whitley*, 21 F.3d 1355, 1362 (5th Cir. 1994) (addressing that concept in the context of cross-examination and noting, "Every experienced trial lawyer realizes that that rule is honored more in the breach than the observance."); *Schlup v. Bowersox*, No. 4:92cv443-JCH, 1996 WL 1570463, at *43 (E.D. Mo. May 2, 1996) (trial counsel "prudently chose not to ask [the witness] additional questions to which he did not know [the witness' answer."); *United States v. Brant*, Civ. Nos. 91-cv-5859 and 91-

cv-6673, and Crim. Nos. 89-cr-111-02 and 89-cr-111-01, 1993 WL 313369, at *2 (E.D. Pa. July 30, 1993) ("There is . . . an ancient principle of cross-examination, recognized by advocates for millennia:  never ask a question to which you do not already know the answer." (citing *Cicero on Cross–Examination* (Irving Younger trans & ed.), *in* The Litigation Manual: A Primer for Young Trial Lawyers 532 (John G. Koetl ed., 2d ed. 1989))).  Any reasonable attorney would recognize the soundness of counsel's decision not to ask the question.

The state court's rejection of petitioner's claim was not contrary to *Strickland*, did not involve an unreasonable application of *Strickland*, and was not based on an unreasonable determination of the facts.  Petitioner is not entitled to federal habeas relief on Ground Four.

Ground Five        "Petitioner's newly discovered claims (affidavits) constitute sufficient ground for a new trial." (Doc. 1, p. 16).

Petitioner claims he has newly discovered evidence that warrants a new trial. (Doc. 1, pp. 16-19).  Respondent asserts this claim is based on state law and is not cognizable on federal habeas review.  (Doc. 20, pp. 25-27).  Respondent further asserts that this claim is procedurally defaulted, because petitioner never presented the state courts with a federal constitutional basis for his newly discovered evidence claim.  Petitioner concedes in his reply that he does not meet the requirements for federal habeas relief on this claim (doc. 24, p. 26), and by this concession abandons this claim.  In light of petitioner's abandonment, federal habeas relief should be denied as to Ground Five.

## CONCLUSION

Federal habeas relief should be denied as to Ground One (relating to the tire track comparison results), Ground Three and Ground Five, as petitioner has

abandoned theses claims.  (Doc. 24, pp. 3, 20, 26).  Federal habeas relief should be denied as to petitioner's remaining claims (Ground One relating to the gunshot residue test result, Ground Two and Ground Four), because petitioner has not demonstrated that the state court's rejection of his claims was contrary to *Strickland*, involved as unreasonable application of *Strickland*, or was based on an unreasonable determination of the facts.

CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides: "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  If a certificate is issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  A timely notice of appeal must still be filed, even if the court issues a certificate of appealability.  Rule 11(b), Rules Governing Section 2254 Cases.

The petitioner in this case fails to make a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84, 120 S. Ct. 1595, 1603-04, 146 L. Ed. 2d 542 (2000) (explaining the meaning of this term) (citation omitted).  Accordingly, the court should deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides:  "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  Rule 11(a), Rules Governing Section 2254 Cases.  If there is an objection to this recommendation by either party, that party may bring such argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully RECOMMENDED:

1.   That the petition for writ of habeas corpus (doc. 1), challenging the judgment of conviction and sentence in *State of Florida v. Dana Gamaliel Smith*, Escambia County, Florida Circuit Court Case Number 07-CF-4037, be DENIED, and the clerk be directed to close the file.

2.   That a certificate of appealability be DENIED.

At Pensacola, Florida this 24th day of April, 2014.


/s/ *Charles J. Kahn, Jr.*

**CHARLES J. KAHN, JR.**
**UNITED STATES MAGISTRATE JUDGE**


<u>NOTICE TO THE PARTIES</u>

Any objections to these proposed findings and recommendations must be filed within fourteen days after being served a copy hereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of any objections shall be served upon any other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).